777 S.E.2d 418

CANAL INSURANCE COMPANY, Appellant,

v.

NATIONAL HOUSE MOVERS, LLC, Kevin E. Jones, David Black, Ron Hewes, and Brent Jones, Respondents.

Appellate Case No. 2014–000150.

No. 5353.

Court of Appeals of South Carolina.

Heard May 14, 2015.

Decided Sept. 16, 2015.

Mark Steven Barrow and William Roberts Calhoun, Jr., of Sweeny Wingate & Barrow, P.A., of Columbia, for appellant.

George Brandt, III, of Henderson Brandt & Vieth, P.A., of Spartanburg, and Eugene C. Covington, Jr., of Covington, Patrick, Hagins, Stern & Lewis, LLC, both of Greenville, for respondents.

WILLIAMS, J.

In this declaratory judgment action, Canal Insurance Company (Canal) appeals the circuit court's finding that National House Movers, LLC's (NHM) commercial automobile insurance policy provided indemnity coverage for injuries Kevin Jones sustained while working for NHM. Canal contends Jones was an employee, as opposed to a "temporary worker," and as such, was excluded from indemnity coverage afforded by NHM's policy. We disagree and affirm.

**FACTS**

At issue in this declaratory judgment action is the employment status of Kevin Jones. NHM is a small house-moving company comprised of three members: Brent Jones,[1] David Black, and Ron Hewes. Hewes is the only permanent employee of NHM and conducts all of the company's operations to elevate or move houses. Hewes hires workers on a project-by-project basis, depending on the needs of a particular job. NHM has no written policies for hiring or firing workers but requires that a potential worker be interviewed by Hewes.

On February 2, 2012, David Johnson, who worked on NHM projects "off and on over the years," contacted Jones about assisting NHM in moving a house. Prior to contacting Jones, Johnson asked Hewes whether more help was needed for this specific job, to which Hewes responded that "one more probably wouldn't hurt." Johnson then called Jones, and Jones agreed to help. Johnson picked him up and transported Jones to the job site to assist NHM in moving a house.

For this particular job, Jones's responsibility was to facilitate the movement of non-electrical cable and telephone wires over the roof of the house to prevent the wires from getting

---

1. Brent Jones is not related to Kevin Jones.

stuck and possibly causing damage to the telephone poles or the house. Hewes instructed Jones to sit on the roof of the house, and if Jones saw a non-electrical wire that might get caught, then he was to use a piece of PVC pipe to facilitate the wire across the roof. Hewes was walking in front of the slow-moving truck when the accident occurred. While the accident had no eyewitnesses, at some point, Jones's arm either touched or came into close contact with an overhead power line, resulting in serious injuries to him.

Because NHM did not qualify for workers' compensation insurance, Jones initiated suit against NHM on June 26, 2012. NHM was insured by a commercial automobile insurance policy issued by Canal, which provided indemnity for "all sums an insured legally must pay as damages because of bodily injury . . . caused by an accident resulting from ownership or use of a covered vehicle." [2]  However, Canal excluded from the policy's coverage any bodily injury sustained by an employee arising out of and in the course of the employee's duties with NHM.

Pursuant to NHM's policy with Canal, " 'Employee' includes a 'leased worker.' Employee also includes any individual, other than an employer, who is employed by an employer and who in the course of his employment directly affects commercial vehicle safety. . . . 'Employee' does not include a 'temporary worker.' " The policy further defines a temporary worker as follows: " 'Temporary worker' means a person who is furnished to [the employer] to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions. 'Temporary worker' does not include a driver of a motor vehicle in your business." Distinct from a "temporary worker," a "leased worker" was defined under the policy as "a person leased to [the employer] by a labor leasing firm to perform duties related to the conduct of your business."

Canal defended the lawsuit under a reservation of rights, and on September 26, 2012, Canal filed the underlying declaratory judgment action, contending the insurance policy excluded coverage for Jones's injuries. Specifically, Canal argued Jones was an employee and, thus, NHM was expressly exclud-

---

**2.** NHM's policy with Canal insured the vehicle owned by NHM that was involved in the accident.

ed from indemnity coverage under the policy. In response, NHM argued Jones was a temporary worker who was furnished to NHM by a third party and, as such, Jones's injuries were not excluded from the policy's coverage.

The circuit court agreed with NHM, finding Jones's seasonal employment with NHM rendered him a temporary worker. Because "furnish" was not specifically defined in the policy and had yet to be construed by our courts in the context of an insurance policy, the circuit court reviewed case law from other jurisdictions in reaching its decision. In doing so, the court found the vast majority of jurisdictions concluded the phrase "furnished to you" necessarily means a third party is involved in "furnishing" the temporary worker to the employer, and third party involvement did not have to be restricted to an employment or staffing agency. As a result, the circuit court held Jones was a "temporary worker" within the meaning of the policy and NHM was, therefore, entitled to indemnity coverage. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err in holding Jones was a temporary worker rather than an employee of NHM and, thus, finding Canal was required to provide indemnity coverage to NHM for Jones's injuries?

## STANDARD OF REVIEW

"The standard of review in a declaratory action is determined by the underlying issues." *Nationwide Mut. Ins. Co. v. Rhoden*, 398 S.C. 393, 398, 728 S.E.2d 477, 479 (2012) (citation omitted). If the dispute is an action to determine whether coverage exists under an insurance policy, the action is one at law. *Id.* (citation omitted). In an action at law, tried without a jury, the appellate court will not disturb the circuit court's findings of fact unless they are found to be without evidence that reasonably supports those findings. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) (citation omitted). "Where the action presents a question of law, as does this declaratory action, this [c]ourt's review is plenary and without deference to the [circuit] court." *Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co.*, 395 S.C. 40, 47, 717 S.E.2d 589, 592 (2011) (citation omitted).

## LAW/ANALYSIS

Canal argues the circuit court erred in concluding Jones's employment with NHM was of a temporary nature and, therefore, finding NHM was entitled to indemnity coverage for the injuries Jones sustained while working for NHM. We disagree.

An insurance policy is a contract between the insured and the insurance company, and the policy's terms are to be construed according to the law of contracts. *Auto Owners Ins. Co. v. Rollison*, 378 S.C. 600, 606, 663 S.E.2d 484, 487 (2008) (citation omitted). "Where the contract's language is clear and unambiguous, the language alone determines the contract's force and effect." *McGill v. Moore*, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009) (citation omitted). "Courts must enforce, not write, contracts of insurance, and their language must be given its plain, ordinary[,] and popular meaning." *Sloan Constr. Co. v. Cent. Nat'l Ins. Co. of Omaha*, 269 S.C. 183, 185, 236 S.E.2d 818, 819 (1977) (citation omitted).

"It is a question of law for the court whether the language of a contract is ambiguous." *S.C. Dep't of Nat. Res. v. Town of McClellanville*, 345 S.C. 617, 623, 550 S.E.2d 299, 302–03 (2001) (citation omitted). The construction of a clear and unambiguous contract is a question of law for the court to determine. *Hawkins v. Greenwood Dev. Corp.*, 328 S.C. 585, 592, 493 S.E.2d 875, 878 (Ct.App.1997) (citation omitted). If the court decides the language is ambiguous, however, evidence may be admitted to show the intent of the parties, and the determination of the parties' intent becomes a question of fact for the factfinder. *Id.* at 592, 493 S.E.2d at 878–79 (citation omitted).

"Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 318 S.C. 231, 236, 456 S.E.2d 912, 915 (1995) (citation omitted). "A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages[,] and terminology as generally

understood in the particular trade or business." *Hawkins,* 328 S.C. at 592, 493 S.E.2d at 878 (quoting 17A AM. JUR. 2D *Contracts* § 338 (1991)).

"A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause." *McGill,* 381 S.C. at 185, 672 S.E.2d at 574 (citation omitted). Whether a contract is ambiguous is to be determined from examining the entire contract, not by reviewing isolated portions of the contract. *Farr v. Duke Power Co.,* 265 S.C. 356, 362, 218 S.E.2d 431, 433 (1975) (citation omitted).

██ Ascertaining whether Jones was a "temporary worker" pursuant to the terms of the policy involves a two-step analysis. We must determine (1) whether NHM hired Jones to "meet seasonal or short-term workload conditions" as required by NHM's policy; and (2) if so, whether Johnson's suggestion to hire Jones satisfied the policy's requirement that the temporary worker be "furnished to [NHM]." We find both of these requirements were satisfied in the instant case.

## A. Seasonal or Short–Term Workload Conditions

We first address whether Jones was hired to "meet seasonal or short-term workload conditions." [3]

The insurance policy expressly defines a "temporary worker" as "a person who is furnished to [the employer] to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." Jones testified he sporadically worked for NHM whenever work was available. If there was no work, "[he] didn't work." According to Jones, "I wasn't no [sic] full-time employee—so I just helped them when they needed it." Jones further stated he only worked for NHM when NHM needed "an extra hand"; Johnson would call Jones before a job and ask him if he wanted to work on that day; and if NHM did not need his services, then no one called him. Furthermore, both parties stipulated Jones "was one of the casual employees who worked only when short-term working conditions involving moving or rais-

---

3. Neither party contends Jones was hired "to substitute for a permanent employee on leave" or that the furnishing requirement only pertains to one clause of the definition. Accordingly, we decline to address these issues.

ing a house required extra help." We find Jones's testimony, as well as the parties' concessions regarding his employment status, fulfills the first prong of the "temporary worker" definition in the policy.[4]

### B. "Furnished To You"

Because we find Jones meets the first prong of being a temporary worker, we next address Canal's argument that the circuit court erred in holding Jones was "furnished to [NHM]" by a third party.

NHM's policy does not define what "furnished to you" means under the policy. As a result, we resort to the usual and customary meaning of "furnish" to aid in determining this phrase's meaning. *See Strother v. Lexington Cty. Recreation Comm'n*, 332 S.C. 54, 62, 504 S.E.2d 117, 122 (1998) ("When faced with an undefined term, the court must interpret the term in accord with its usual and customary meaning." (citation omitted)); *Anderson v. Buonforte*, 365 S.C. 482, 490, 617 S.E.2d 750, 754 (Ct.App.2005) ("When a term is not defined within a contract, evidence of its usual and customary meaning is competent to aid in determining its meaning." (citation omitted)). *Black's Law Dictionary* defines "furnish" as "to supply, provide or equip, for accomplishment of a particular purpose." BLACK'S LAW DICTIONARY 675 (6th ed.1990). *The American Heritage Dictionary* defines "furnish" as "[t]o equip with what is needed" and to "supply" or "give." AM. HERITAGE DICTIONARY 540 (2d college ed.1982). *Webster's Third New International Dictionary* defines "furnish" as "to provide or supply with what is needed, useful, or desirable." WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 923 (2002). Although these definitions do not specify who undertakes the furnishing, we believe that third party action is implicit in the meaning of "furnish."

We find case law from other jurisdictions supports the conclusion that a third party must be involved when one is

---

4. We also note "temporary" is defined as "[l]asting for a time only; existing or continuing for a limited (usu. short) time; transitory." BLACK'S LAW DICTIONARY 1693 (10th ed.2014). We believe the plain and ordinary meaning of this term corroborates Jones's testimony and our conclusion that Jones's employment was to meet short-term workload conditions.

furnished to another. Our courts have yet to interpret the phrase "furnished to you" in the context of a commercial automobile policy. However, as noted by the circuit court in its order, the majority of courts from other jurisdictions analyzing this phrase confirm it necessarily means a third party, other than the employer, is involved in "furnishing" the temporary worker to the employer. *See, e.g., Northland Cas. Co. v. Meeks,* 540 F.3d 869, 875 (8th Cir.2008) ("We believe that the term 'furnished to,' in the context of the Policy's definition of 'temporary worker,' 'is not ambiguous and necessarily implies that a third party has been involved in providing or supplying the worker to the insured.' " (citing *Gavan v. Bituminous Cas. Corp.,* 242 S.W.3d 718, 721 (Mo.2008))); *Gen. Agents Ins. Co. of Am., Inc. v. Mandrill Corp., Inc.,* 243 Fed.Appx. 961, 968 (6th Cir.2007) (finding "furnished to" requires the involvement of a third party); *Carl's Italian Rest. v. Truck Ins. Exch.,* 183 P.3d 636, 639 (Colo.App.2007) (finding temporary worker must be furnished by a third party to satisfy phrase in commercial liability policy); *Monticello Ins. Co. v. Dion,* 65 Mass.App.Ct. 46, 836 N.E.2d 1112, 1115 (2005) (stating the definition of a temporary worker necessarily connotes some involvement by a third person); *Mendenhall v. Prop. and Cas. Ins. Co. of Hartford,* 375 S.W.3d 90, 92 (Mo.2012) (finding no dispute that the phrase "furnished to you" requires the involvement of a third party); *Gavan,* 242 S.W.3d at 721 (holding the term "furnished to," in the context of a commercial general liability policy and in its plain and ordinary meaning, was not ambiguous and necessarily implied that a third party had been involved in providing or supplying the worker to the insured); *Rhiner v. Red Shield Ins. Co.,* 228 Or.App. 588, 208 P.3d 1043, 1046 (2009) (concluding the phrase "a person who is furnished to you," as used in the definition of temporary worker, means a person who is referred from, or provided by, a third party); *Borntreger v. Smith,* 340 Wis.2d 474, 811 N.W.2d 447, 450 (Ct.App.2012) (finding temporary worker definition unambiguously requires the person to be furnished by a third party).[5]  Based on the foregoing, we find

---

5. These cases are cited only for the conclusion that third party involvement is required to satisfy the meaning of the phrase "furnished to." Many of these courts came to different conclusions as to whether the injured individual was a temporary worker as well as whether the

the phrase "furnished to you" unambiguously requires third party involvement.

█ Despite our conclusion that a third party must furnish the temporary worker to the employer, we hold the phrase "furnished to you," as used in the policy, fails to specify who this third party must be. This language is capable of different meanings, one of which affords liability coverage and the other which does not. For example, the language of the policy does not explicitly require that a temporary worker be furnished to NHM by a third party, such as a staffing or leasing agency. We find a reasonable interpretation is that the temporary worker could be furnished to NHM by any person or company, including another employee of the employer. *See Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 61 A.D.3d 655, 657, 877 N.Y.S.2d 359 (N.Y.App.Div.2009) (construing policy in favor of insured and stating "the term 'furnished,' as used in the policy, is ambiguous since the policy did not clearly define whether any third party, including another employee, could furnish a person to the insured . . . for that person to qualify as a temporary worker or whether the third-party must be a recruitment and placement consultant, employment referral agency, or similar service . . . for the referred individual to qualify as a temporary worker"); *Nat'l Indem. Co. of The South v. Landscape Mgmt. Co., Inc.*, 963 So.2d 361, 362, 364 (Fla.Dist.Ct.App.2007) (holding the definition of "temporary worker" in a commercial general liability insurance policy was ambiguous and, thus, could be construed to apply to a worker who was referred by a permanent employee of the insured to work for the summer). The policy is silent as to who must furnish the temporary worker to Canal for the worker to qualify under the policy, and both parties set forth several reasonable interpretations. Accordingly, we conclude this phrase is ambiguous.[6]

_____

failure to define the term "furnished to you" rendered the policy ambiguous.

6. Although the concurrence feels "[i]t is not necessary that we go further and define furnish or determine whether Jones was a temporary worker," we respectfully disagree. To suggest the inquiry ends at a finding of ambiguity conflicts with our longstanding jurisprudence regarding the interpretation of insurance policies. Because the parties' arguments center on the meaning of "furnished to"—a clause found

Furthermore, based upon a plain reading of the insurance policy, we find the exclusionary language did not require the use of a temporary employment agency or other business for a "temporary worker" to be "furnished" to an employer. As a result, we decline to accept Canal's interpretation of the policy as it pertains to who must furnish the worker. We find support for our conclusion by reference to other provisions within the policy. Specifically, Canal chose to specify that a "leased worker" was a person leased to the employer by a labor leasing firm, whereas the definition of "temporary worker" is not qualified by the existence of any agency or employment relationship. *See Bituminous Cas. Corp. v. Mike Ross, Inc.,* 413 F.Supp.2d 740, 745 (N.D.W.Va.2006) (disagreeing with insurer's argument that a temporary worker must be furnished by a temporary employment agency and finding insurer's requirement that a "leased worker" be furnished by a labor-leasing firm, while failing to mention the same for a "temporary worker," rendered the policy ambiguous); *Mendenhall,* 375 S.W.3d at 93–94 (discussing differences in definition of "temporary worker" and "leased worker" and stating the difference in the level of specificity between the two definitions was a relevant consideration in construing the terms and concluding that under the facts of the case, the phrase "furnished to" was ambiguous and the policy should be construed against the insurer).

We hold that, as the drafter, Canal had the obligation of specifying who needed to furnish the temporary worker if it wished to include such language in its policy. *See Mathis v. Brown & Brown of S.C., Inc.,* 389 S.C. 299, 308, 698 S.E.2d 773, 778 (2010) ("[A] court will construe any doubts and ambiguities in an agreement against the drafter of the agreement."); *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC,* 374 S.C. 483, 499–500, 649 S.E.2d 494, 502 (Ct.App.2007) ("Ambiguous language in a contract should be construed liberally and most strongly in favor of the party who did not write or prepare the contract and is not responsible for the

within the definition of temporary worker—we do not believe this case can be resolved merely upon a finding of ambiguity in the employee exclusion. Rather, we must determine the meaning of "furnished to" and, thus, whether Jones qualified as a temporary worker as that term is defined in the policy.

ambiguity; and any ambiguity in a contract, doubt, or uncertainty as to its meaning should be resolved against the party who prepared the contract or is responsible for the verbiage." (quoting *Myrtle Beach Lumber Co., Inc. v. Willoughby,* 276 S.C. 3, 8, 274 S.E.2d 423, 426 (1981) (internal quotation marks omitted))). Because it is Canal's responsibility, as the insurer, to clearly enumerate which damages are excluded from coverage under its policy—and ambiguous provisions are to be construed strictly against the insurer—we find the policy should be construed in favor of NHM. *See Diamond State Ins. Co.,* 318 S.C. at 236, 456 S.E.2d at 915 ("Ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." (citation omitted)).[7] Based on the foregoing, we find Jones was a temporary worker and, as such, NHM was entitled to indemnity coverage pursuant to its policy with Canal.

**CONCLUSION**

Accordingly, the circuit court's decision is

**AFFIRMED.**

HUFF, J., concurs.

FEW, C.J., concurring.

I agree with the majority's decision to affirm. However, I would do so only on the narrow question of whether the policy exclusion for an "employee" excludes coverage for Jones. In my opinion, the exclusion is ambiguous as it applies to Jones, and therefore unenforceable in this case. This finding of ambiguity is sufficient for us to determine the circuit court correctly ruled the policy covers this accident.

---

7. In the last issue of its brief, Canal claims that because Jones was directly involved in an action that affected vehicle safety, he is an "employee" for purposes of the policy, under which an employee is defined as "any individual ... who in the course of his or her employment directly affects motor vehicle safety." We find this argument unpersuasive, particularly when the same definition contradicts Canal's argument by expressly excluding a "temporary worker" from being an employee. *See McGill,* 381 S.C. at 185, 672 S.E.2d at 574 ("A contract is read as a whole document so that one may not create an ambiguity by pointing out a single sentence or clause.").

Our courts construe insurance policies "according to the law of contracts." *Williams v. Gov't Employees Ins. Co. (GEICO)*, 409 S.C. 586, 594, 762 S.E.2d 705, 709 (2014). Under the law of contracts, because the insurer drafted the policy, we construe "[a]mbiguous or conflicting terms in [the] policy ... liberally in favor of the insured and strictly against the insurer." 409 S.C. at 595, 762 S.E.2d at 710 (citation omitted). As our supreme court has stated, "[w]here the words of an insurance policy are capable of two reasonable interpretations," courts will adopt the "construction ... which is most favorable to the insured." *Greenville Cnty. v. Ins. Reserve Fund, a Div. of S.C. Budget & Control Bd.*, 313 S.C. 546, 547, 443 S.E.2d 552, 553 (1994) (citation omitted); *see also Precision Walls, Inc. v. Liberty Mut. Fire Ins. Co.*, 410 S.C. 175, 183, 763 S.E.2d 598, 602 (Ct.App.2014) ("The court must construe ambiguous terms in an insurance policy liberally in favor of the insured and strictly against the insurer.").

This rule applies to a court's interpretation of insurance policy exclusions. *See Owners Ins. Co. v. Clayton*, 364 S.C. 555, 560, 614 S.E.2d 611, 614 (2005) ("Insurance policy exclusions are construed most strongly against the insurance company...."). An exclusion that is ambiguous—interpreted "most strongly" against the insurer and in favor of the insured—is not enforceable. *See generally Boyd & Stevenson Coal Co. v. Dir., Office of Workers' Comp. Programs*, 407 F.3d 663, 667–68 (4th Cir.2005) ("It is a general principle of contract law that exclusionary language in a contract will be construed against an insurer.... [I]t is incumbent upon the insurer to employ exclusionary language that is clear and unambiguous.... [D]oubtful, ambiguous language in an insurance policy will be given an interpretation which grants coverage, rather than one which withholds it." (applying Virginia law) (citations and internal quotation marks omitted)); *Gates, Hudson & Assocs., Inc. v. Fed. Ins. Co.*, 141 F.3d 500, 502 (4th Cir.1997) ("Exclusions in particular are read narrowly and are enforceable only when the exclusions unambiguously bring the particular act or omission within [their] scope." (applying Virginia law) (citation and internal quotation marks omitted)).

In this case, the policy provides coverage for "all sums [NHM] legally must pay as damages because of bodily injury ... caused by an accident resulting from ownership or use of

a covered vehicle." However, the policy excludes from coverage bodily injury suffered by an "employee." Thus, Canal must pay the damages NHM is liable to pay to Jones unless the exclusion for an "employee" unambiguously applies to Jones. The policy provides that a "temporary worker" is not an employee. If Jones was a temporary worker, the "employee" exclusion did not apply to him. Therefore, the policy covers Jones unless he was clearly *not* a temporary worker.

As the majority explains, whether Jones is a temporary worker turns on the word "furnish." Canal argues "furnish" requires that Jones have been provided by a third-party employment agency to qualify as a temporary worker. Canal's argument, however, is in conflict with the definition it gave to "leased worker" in the policy. That definition expressly requires the worker to be "leased to [NHM] by a labor leasing firm under an agreement between [NHM] and the labor leasing firm." Because Canal chose to define what it contends is the same requirement in different ways, it created ambiguity. Specifically, Canal's express requirement that a "leased worker" be provided by a "labor leasing firm" indicates it did not intend to require that a "temporary worker" be provided by a third-party employment agency. Rather, Canal's choice to define the terms differently indicates the terms have different meanings as to the requirement of being "furnished."

Construing the exclusion "most strongly against" Canal, I would find the exclusion is ambiguous as it applies to Jones, and therefore unenforceable. It is not necessary that we go further and define furnish or determine whether Jones actually was a temporary worker.